1  Douglas Pahl, OR Bar No. 950476
   DPahl@perkinscoie.com
2  Amir Gamliel, Cal. Bar No. 268121
   (Admitted *Pro Hac Vice*)
3  AGamliel@perkinscoie.com
   PERKINS COIE LLP
4  1120 N.W. Couch Street
   10th Floor
5  Portland, OR 97209-4128
   Telephone: 503.727.2000
6  Facsimile: 503.727.2222

7  Proposed Counsel for Debtor and Debtor-
   in-Possession

8

9

10           UNITED STATES BANKRUPTCY COURT

11             FOR THE DISTRICT OF OREGON

12  In re

13  WILDHORSE MEADOWS, LLC,            Case No. 18-32267-tmb11

14                Debtor.              **DEBTOR'S APPLICATION FOR
                                       ORDER TO EMPLOY PERKINS COIE
                                       LLP AS ATTORNEYS FOR DEBTOR**
15

16

17          Debtor and debtor-in-possession Wildhorse Meadows, LLC ("***Wildhorse***" or "***Debtor***"),

18  hereby applies to the Court for an order approving the employment of Perkins Coie LLP ("***Perkins***

19  ***Coie***") as Chapter 11 counsel for Debtor. Debtor makes this Application pursuant to 11 USC § 327,

20  and Federal Rule of Bankruptcy Procedure 2014, and respectfully represents as follows.

21          1.      This Court has jurisdiction over this matter pursuant to 28 USC §§ 1334 and 157.

22  This matter is a core proceeding pursuant to 28 USC § 157(b)(2)(A) and (O). Venue of this

23  proceeding is proper in this District pursuant to 28 USC §§ 1408 and 1409. The statutory predicates

24  for the relief requested herein are 11 USC §§ 105(a) and 327.

25          2.      On the date hereof (the "***Petition Date***"), Debtor filed a Voluntary Petition for relief

26  under Chapter 11 of Title 11 of the United States Code (the "***Bankruptcy Code***").

27

28

3. Debtor continues to operate and manage its business as debtor-in-possession pursuant to 11 USC §§ 1107 and 1108 of the Code. No trustee or examiner has been requested or appointed in Debtor's case.

4. Debtor has provided notice of this Application to its 20 largest unsecured creditors, its secured creditor(s), and the Office of the United States Trustee. No unsecured creditors' committee has been appointed in this case. Because of the nature of the relief requested, Debtor respectfully submits that no further notice of the relief requested is necessary or required under the circumstances.

5. Aspen Lakes operates an award winning 18-hole golf course, clubhouse and restaurant facility near Sisters, Oregon. The golf course and related facilities are leased by Aspen Lakes from affiliate debtor Wildhorse Meadow LLC. Affiliate debtor Aspen Investments, L.L.C. owns approximately 330 acres of land northwest of the golf course and 120 acres of surface mine and farm land. The 330-acre property is zoned as rural residential with a destination resort overlay.

6. Debtor desires to retain and employ Perkins Coie as counsel in this Chapter 11 Case, pursuant to Section 327 of the Code, to represent Debtor in all aspects of its reorganization, on the terms and subject to the conditions described below.

7. Debtor believes Perkins Coie is well suited for this representation. Perkins Coie has experience in all aspects of the law that may arise in this Chapter 11 case. In particular, Perkins Coie has substantial bankruptcy and restructuring, corporate, environmental, finance, litigation, real estate, regulatory, labor and tax expertise.

8. Debtor has asked Perkins Coie to advise it on debt restructuring and to render general legal services as needed throughout the course of this Chapter 11 case, including bankruptcy and restructuring, corporate, environmental, finance, litigation, real estate, regulatory, securities, labor and tax assistance and advice. Debtor is informed that Douglas Pahl, the attorney at Perkins Coie primarily involved in this Chapter 11 case, is admitted to practice before the Court and that he has read Local Bankruptcy Rule 2016.

9.     The services to be performed by Perkins Coie are necessary for Debtor to perform its duties as debtor-in-possession.  Subject to the control of and further order of the Court, Perkins Coie intends to render the following services to Debtor:

a.     Advise Debtor of its rights, powers and duties as debtor and debtor-in-possession continuing to operate and manage its businesses and property under Chapter 11 of the Bankruptcy Code;

b.     Take all actions necessary to protect and preserve Debtor's bankruptcy estate, including the prosecution of actions on Debtor's behalf, the defense of any action commenced against Debtor, negotiations concerning all litigation in which Debtor is involved, objections to claims filed against Debtor in this bankruptcy case, and the compromise or settlement of claims;

c.     Advise Debtor concerning, and prepare on behalf of Debtor, all necessary applications, motions, memoranda, responses, complaints, answers, orders, notices, reports and other papers, and review all financial and other reports required from Debtor as debtor-in-possession in the administration of this Chapter 11 case;

d.     Advise Debtor with respect to, and assist in the negotiation and documentation of, financing agreements, debt and cash collateral orders, and related transactions;

e.     Review the nature and validity of any liens asserted against Debtor's properties and advise Debtor concerning the enforceability of such liens;

f.     Advise Debtor regarding (i) its ability to initiate actions to collect and recover property for the benefit of its estate; (ii) any potential property dispositions; and (iii) executory contract and unexpired lease assumptions, assignments and rejections, and lease restructuring and recharacterizations;

g.     Negotiate with creditors concerning a plan of reorganization; prepare the plan of reorganization, disclosure statement and related documents; take the steps necessary to confirm and implement the plan of reorganization, including, if needed, negotiations for financing the plan; and

h. Provide such other legal advice or services as may be required in this Chapter 11 case or the general operation and management of Debtor's business.

10. Subject to Court approval, Debtor has agreed to compensate Perkins Coie on an hourly basis in accordance with Perkins Coie's ordinary and customary hourly rates in effect on the date services are rendered. The Perkins Coie professionals who will be primarily responsible for providing these services, their status and their billing rates are as follows:

| Attorney Name | Status | Hourly Rate |
|---|---|---|
| Douglas Pahl | Partner | $550 |
| Amir Gamliel | Counsel | $680 |
| Kimberly Hutchison | Paralegal | $230 |

11. From time to time, other Perkins Coie attorneys, paralegals and legal assistants may also render services to Debtor to take advantage of specialized skills or expertise, to meet the demands of the case schedule or for other appropriate reasons. Debtor has agreed that Perkins Coie will also be compensated for the services of these professionals at their usual and customary hourly rates.

12. Perkins Coie will maintain detailed, contemporaneous time records of expenses incurred with the rendering of legal services described above by category and nature of services rendered.

13. Prior to the petition date, Perkins Coie received from Aspen Lakes a retainer in the amount of $20,000. In addition, prior to the petition date, Perkins Coie received from Triple C Farms, for the benefit of Debtor, two retainer payments in the amount of $50,000 and $20,000. Prior to the filing of the bankruptcy petition, Perkins Coie applied these retainers for prepetition services rendered prior to the Petition Date and the Chapter 11 filing fee, as disclosed on the attached Rule 2014 Verified Statement for Proposed Professional.

14. Within the 12-month period preceding the Petition Date, Perkins Coie provided legal services to the Debtor. The total cost of legal services prior to the filing of the Petition, and payments for those services, are disclosed on the attached Rule 2014 Verified Statement for Proposed Professional. Perkins Coie may seek payment of additional fees or costs related to this

Chapter 11 Case incurred prior to the bankruptcy filing from the bankruptcy estate, subject to Court approval.

15.     Debtor agrees and understands that Perkins Coie has reserved the right to withdraw as counsel to Debtor, and Debtor hereby consents to such a withdrawal, in the event it becomes apparent Perkins Coie will not be paid for its services. Debtor also recognizes that professional fees and costs incurred by Perkins Coie are subject to approval by the Court after review of fee applications filed by Perkins Coie. In particular, the Perkins Coie engagement letter and the incorporated "Information for Clients," attached hereto as Exhibit 2, contain provisions that although applicable and appropriate outside of a bankruptcy proceeding, may be inconsistent with the Bankruptcy Code and Rules, as well as the local rules and forms of this Court. Debtor recognizes that to the extent terms contained in the Perkins Coie engagement are at odds with the Bankruptcy Code and Rules or the local rules and forms of the Court, or with the determinations of this Court, such provisions will yield.

16.     To the best of Debtor's knowledge, the partners and associates of Perkins Coie do not have any connection with the Debtor, its creditors, any other party in interest, or their respective attorneys or accountants, except as stated in the Rule 2014 Verified Statement of Proposed Professional.

17.     A proposed Order Authorizing Employment of Perkins Coie LLP as Attorneys for Debtor is attached as Exhibit 1.

For the reasons stated in this Application, Debtor requests the Court enter an order authorizing it to employ Perkins Coie to represent the Debtor in this Chapter 11 case as its attorneys to render legal services as described above, with compensation and reimbursement of expenses to be paid as an administrative expense in such amounts as may be allowed by this Court after notice and hearing pursuant to Section 330 of the Bankruptcy Code or as otherwise provided by Court order.

Dated: July 9, 2018                WILDHORSE MEADOWS, LLC

                                   By: _/s/ Matt Cyrus_____
                                   Matt Cyrus

Debtor's Application for Order to Employ Perkins Coie LLP as Attorneys for Debtor

Presented by:

Dated: July 9, 2018                              PERKINS COIE LLP

                                                 By: */s/ Douglas Pahl*_____
                                                     Douglas Pahl
                                                     Amir Gamliel

                                                 Proposed Attorneys for Debtor and Debtor-in-Possession

# EXHIBIT 1

1
2
3
4
5
6
7
8
9
10          UNITED STATES BANKRUPTCY COURT

11            FOR THE DISTRICT OF OREGON

12  In re
                                        Case No. 18-32267-tmb11
13  WILDHORSE MEADOWS, LLC,
                                        **ORDER AUTHORIZING**
14            Debtor.                   **EMPLOYMENT OF PERKINS COIE**
                                        **LLP AS ATTORNEYS FOR DEBTOR**
15

16

17          THIS MATTER having come before the Court for a hearing on the application (the

18  "*Application*") of Wildhorse Meadows, LLC, debtor and debtor-in-possession ("*Debtor*"), for an

19  Order to Employ Perkins Coie LLP as attorneys for Debtor; the Court having reviewed the

20  Application and accompanying statement, and being otherwise duly advised; now, therefore,

    IT IS HEREBY ORDERED that the Application is approved and Debtor be and
21
    hereby is authorized to employ the law firm of Perkins Coie LLP as general counsel in all matters
22
    arising in or related to this proceeding as of the Petition Date, and is further authorized to pay said
23
    attorneys a reasonable fee for their services upon application and order of the Court.
24
                                        ###
25

26

27

28

Presented By:

PERKINS COIE LLP

By: */s/ Douglas Pahl*_____
Douglas Pahl
Amir Gamliel

Proposed Attorneys for Debtor and Debtor-in-Possession

# EXHIBIT 2

**PERKINS COIE**

1120 NW Couch Street
10th Floor
Portland, OR 97209-4128

☎ +1 503 727 2000
🖷 +1 503 727 2222
PerkinsCoie.com

May 25, 2018

**Douglas R. Pahl**
DPahl@perkinscoie.com
D. +503.727.2087
F. +503.346.2087

Matt Cyrus
Wildhorse Meadows, LLC, et al
Via email: Matt@aspenlakes.com

**Re:    Legal Representation**

Dear Matt:

We are delighted that Wildhorse Meadows, LLC, Aspen Lakes Golf Course, LLC, Aspen Investments, LLC, Aspen Lakes Utility Company, LLC, and Sisters Aggregate & Construction, LLC (collectively, the "Jointly Represented Clients," "you" or "your") have selected Perkins Coie LLP as legal counsel. This letter describes the scope and terms of our engagement. Although this letter addresses the formalities of our engagement, we want you to know how honored we are that you have placed your trust in us.

Perkins Coie will represent you in connection with restructuring advice. This letter will also apply to any additional matters that we undertake at the Jointly Represented Clients' request, unless otherwise specified in a separate engagement letter addressing that matter.

Unless other arrangements are made, the principal factors in determining our fees will be the time and effort devoted to the matter and the hourly rates of the lawyers and paralegals involved. I will have primary oversight for Perkins Coie's representation of the Jointly Represented Clients, but we assign other firm lawyers and paralegals when necessary, beneficial or cost-effective and when desirable to meet the time constraints of the matter. My current hourly rate for this initial matter is $550. Our hourly rates range from $820 per hour for our most experienced partners to $320 for our most junior associates and $125 to $320 for paralegals, depending on their experience levels. These rates are adjusted at least annually, usually on January 1. Services performed after the effective date of the new rates will be charged at the new applicable rates. We normally issue invoices for our fees and disbursements on a monthly basis. These invoices include detail that most of our clients find sufficient, but please let me know at any time if more detailed information is needed on our invoices. Please also refer to the enclosed Information for Clients for specifics regarding fees, disbursements, billing, payment, and termination of our representation should payment not be made or other circumstances warrant.

As I am sure you understand, the proceedings in which you ask us to represent the Jointly Represented Clients are unpredictable and involve the risk of adverse consequences for you. We

cannot guarantee the outcome of any proceeding. We may, however, express opinions or beliefs reflecting our professional judgment concerning the proceedings or various courses of action and the results that might be anticipated. Because a substantial number of variables (principally, the approach of your opponents) can drive the cost of your legal representation, it is impossible to estimate with any certainty what the total charges may come to for any proceeding we undertake on your behalf. Your obligation to pay our fees and costs is not contingent on the outcome of the matter.

To enable us to represent you effectively, you will cooperate fully with us in all matters related to your case and to fully and accurately disclose to us all facts and documents that may be relevant to the matter or that we may otherwise request. You will also make yourself reasonably available to attend meetings, discovery proceedings and conferences, hearings and other proceedings.

Our representation of the Jointly Represented Clients does not include acting as counsel for any entity in which the Jointly Represented Clients holds equity or any subsidiary, affiliate, equity-holder, employee, family member or other person (collectively, "Affiliates"), unless such additional representation is separately and clearly undertaken by us. If in the future we and the Jointly Represented Clients mutually agree to expand our representation of the Jointly Represented Clients to include any of the Jointly Represented Clients' Affiliates, it is agreed that the terms, conditions and consents contained herein will apply to such representation(s).

Perkins Coie represents many other companies, individuals and government agencies ("clients"). During the time we are representing the Jointly Represented Clients we may be asked to represent:

(1)     other present or future clients in transactions, litigation or other disputes directly adverse to the Jointly Represented Clients that are not substantially related to our representation of the Jointly Represented Clients; and/or

(2)     parties who are considered directly adverse parties in matters we handle for the Jointly Represented Clients. Our work for these directly adverse parties would be in matters that are not substantially related to our work for the Jointly Represented Clients.

We request the Jointly Represented Clients' consent to allow Perkins Coie to undertake such future representations without the need to obtain any further or separate approval from the Jointly Represented Clients, as long as those representations described in (1) and (2) above are not substantially related to work Perkins Coie has done, or is doing, for the Jointly Represented Clients. Your signature below constitutes the Jointly Represented Clients' consent to such representation(s). We agree not to use any proprietary or other confidential nonpublic

information concerning the Jointly Represented Clients acquired by us as a result of our representation of the Jointly Represented Clients in connection with any litigation or other matter in which we represent a party directly adverse to the Jointly Represented Clients.

Perkins Coie may need to consult with or secure consent from its other current or prospective clients who are or may become adverse to you in order to clear or address actual or potential conflicts of interest. You agree and consent that to the extent it is reasonably necessary in such communications, Perkins Coie may disclose to each such current or prospective client the fact that Perkins Coie has or has had an attorney-client relationship with you.

During our representation of the Jointly Represented Clients, there may be issues that raise questions about our duties under the rules of professional conduct that apply to lawyers. These might include, e.g., conflict of interest issues, and could even include issues raised because of a dispute between us and a client over the handling of a matter. Normally when such issues arise we would seek the advice of our Professional Standards Counsel, Loss Prevention partners or Professional Standards Conflicts Attorneys who are experts in such matters. Consistent with the rulings of courts in many jurisdictions, we consider such consultations to be attorney-client privileged conversations between firm personnel and counsel for the firm. However, there have been judicial decisions indicating that under some circumstances such conversations involve a conflict of interest between the client and Perkins Coie and that our consultation with Perkins Coie's counsel may not be privileged, unless we either withdraw from the representation of the client or obtain the client's consent to consult on a privileged basis with Perkins Coie's counsel.

We believe that it is in our clients' interests, as well as ours, that in the event legal ethics or professional responsibility issues arise during a representation, we receive expert analysis. Accordingly, as part of our agreement concerning our representation of the Jointly Represented Clients, you agree that if we determine in our own discretion during the representation that it is appropriate to consult with our firm counsel (either Perkins Coie's internal counsel or, if we choose, outside counsel) we have your consent to do so on a privileged basis despite any alleged conflict of interest. You further agree that our continuing to represent you at the time of such consultation shall not thereby waive or otherwise limit any attorney-client privilege that Perkins Coie has regarding the confidentiality of our communications with our own in-firm or outside counsel. The costs associated with such legal counsel for Perkins Coie will be paid solely by Perkins Coie and will not be charged to you in any way.

The Oregon Rules of Professional Conduct require us to recommend that you seek independent counsel in determining whether the consent described above should be given.

As we discussed over the phone over the past two weeks, the ideal way to proceed would be for each of you to have separate counsel. On many issues, such as compensation, ownership shares and control of the enterprise, you may or will have conflicting or potentially conflicting interests. Notwithstanding the above, you have each said that, to keep legal costs to a minimum, you wish our firm to represent each of you.

Our bills will be sent to you, attention Wildhorse Meadows LLC, but each of the Jointly Represented Clients will be jointly and severally responsible for payment. If you disagree on any issue, we will ask you to resolve your differences among yourselves, without our assistance. If you cannot resolve your differences, we will not be able to represent any one of you on that issue. If the differences are serious enough, we may be required by applicable ethics rules to withdraw from the matter completely. We are confident that Wildhorse Meadows' payment of fees will not interfere with our professional judgment or our attorney-client relationship with the other client. Your signature below constitutes your consent to our joint representation of you while the fees are paid by Wildhorse Meadows.

When we are asked to represent more than one client in a single matter, the rules governing lawyers' professional responsibility and conflicts of interest require that we (1) explain the implications of joint representation and the advantages and risks involved, and (2) obtain the informed consent of each client participating in the joint representation.

The primary advantage of joint representation is an avoidance of duplication in legal effort and costs. Potential disadvantages may also arise when the same law firm jointly represents two or more clients.

The first potential disadvantage involves the sharing of information between the jointly represented clients. We cannot effectively undertake joint representation of multiple clients on the same matter unless all material information supplied to, or obtained by, us in the course of the joint representation is available to all of the clients. In entering into this joint representation, each client agrees that no confidences will exist among us regarding the work we do for you in the jointly represented matter. That means, among other things, that if we receive information from or about one client that we believe the other client should have in order to make decisions regarding the subject of the joint representation, we may provide that information to the other client.

The second potential disadvantage to joint representation is that a conflict of interest may one day surface between the clients. We do not see that as a significant risk in this case and are comfortable that we can represent the clients jointly at this time without any conflicts of interest. Nonetheless, there is always the possibility that a conflict of interest could arise. If, at any time in the future, you or our firm concludes a conflict of interest exists that precludes continued joint

representation, you believe your interests would be better served by separate representation, or you simply desire separate representation, then you or we will promptly raise that belief or desire. Should a conflict of interest arise that prevents continued joint representation, or a conflict of interest arise after you exit the joint representation, you agree that we may continue to represent the remaining client(s), and you will have the opportunity to select your own attorney. Such new counsel will be at your own expense and you will remain responsible for your share of any fees or costs expended or incurred prior to the termination of this agreement. You also agree that our continued representation of the remaining client(s) may include representing the remaining client(s) directly adverse to you and that we may use any and all information gained in the course of the joint representation in our continued representation of the remaining client(s).

We could be forced to withdraw from the joint representation if we believe that any one of the clients is unable to make adequately informed decisions regarding the representation or if for any other reason we conclude that we cannot continue to jointly represent the clients impartially and without an improper effect on our responsibilities to any one of the clients. Should a dispute arise between or among the clients in the course of the joint representation, we will be unable to advise the clients with respect to their rights vis a vis one another. If the dispute cannot be resolved, we may be required by applicable ethics rules to withdraw from the matter completely.

This letter, along with the enclosed Information for Clients, confirms the terms and conditions under which Perkins Coie LLP will provide legal services to the Jointly Represented Clients. Unless otherwise agreed in writing, the terms of this letter and the enclosed Information for Clients will also apply to any additional matters that we undertake at the Jointly Represented Clients' request. If you agree that this letter correctly describes the terms of our engagement, please sign and date a copy of this letter and return it to me. Should you have any questions about this letter, our services or fees, or if you have any other concerns, please call me at any time. We look forward to working with you and are gratified by your confidence in Perkins Coie.

Sincerely,

Douglas R. Pahl

DRP:dma

Enclosure:    Information for Clients

Matt Cyrus
Wildhorse Meadows, LLC, et al
May 25, 2018
Page 6


ACCEPTED AND AGREED:

WILDHORSE MEADOWS, LLC

By: _~Matt h~_____
Print Name: _Matt Cyrus_____
Its: _Manager Member_____
Date: _5/25/18_____

ASPEN LAKES GOLF COURSE, LLC

By: _~Matt h~_____
Print Name: _Matt Cyrus_____
Its: _Manager Member_____
Date: _5/25/18_____

ASPEN INVESTMENTS, LLC

By: _~Matt h~_____
Print Name: _Matt Cyrus_____
Its: _Manager Member_____
Date: _5/25/18_____

ASPEN LAKES UTILITY COMPANY,
LLC

By: _~Matt h~_____
Print Name: _Matt Cyrus_____
Its: _Manager Member_____
Date: _5/25/18_____

SISTERS AGGREGATE &
CONSTRUCTION, LLC

By: _~Matt h~_____
Print Name: _Matt Cyrus_____
Its: _Manager Member_____
Date: _5/25/18_____

91004-1100.0010/LEGAL.140023576.1
Redaction  P

# Information for Clients

Perkins Coie LLP is pleased to serve you. The following information explains the terms that apply to our engagements (except to the extent that you have reached a different written understanding with us about particular terms) for legal services provided by Perkins Coie LLP. No changes or additions to these terms will be binding unless confirmed in writing sent by us or signed by us. We encourage you to discuss this information with our lawyers at the inception of a matter and whenever you have questions during the course of that matter. Section headings are for convenience of reference only and not intended to affect the interpretation of the provisions of such sections.

**Personnel.** We generally assign one lawyer primary responsibility for seeing that your requests for legal services are met, but additional lawyers, paralegals and technology professionals may assist in rendering the most appropriate and efficient legal services. We attempt to assign personnel to each matter based on the nature and scope of the issues raised by the matter and our lawyers' experience and expertise.

**Basis for Fees.** We charge for legal services rendered by our firm at applicable hourly rates. Each attorney, paralegal, and other timekeeper records time at assigned billing rates. Because hourly rates vary among personnel, each statement typically reflects a composite of several hourly rates. Those rates are reviewed periodically and change at least annually (usually on January 1) based on economic factors and the changing experience levels of our personnel. Services performed after the effective date of the new rates will be charged at the new rates.

**Disbursements and Other Charges.** In the course of performing legal services for you, various services may be provided by third parties. Examples include messenger and courier charges, filing and recording fees, foreign agent fees, court reporters and transcript costs, expert and other witness fees, discovery vendor costs, charges for outside consultants and research services, and travel expenses. You are responsible for these third-party charges, and we reserve the right to forward their invoices directly to you for payment. For administrative ease, however, we may advance payment to the third-party provider and include the charge on our invoice to you, with no markup for handling. We will retain and not allocate to clients relatively insignificant discounts we receive for prompt payment or volume usage. For patent, trademark and other matters that may involve significant third-party payments, you may be required to maintain a minimum balance in a trust account to fund such payments. You will be advised of any such requirements, and we will not be obligated to request or pay for third-party services not fully covered by such deposits.

We will also charge you for certain internal services we provide in connection with our legal services. As noted below, because we both invest in specialized equipment and commit to long-term contracts with computer research vendors (such as Westlaw) and other vendors, we achieve savings in exchange for guaranteed payment, usage or other obligations undertaken at our risk. This allows us to charge our clients for certain services at rates discounted below standard rates. However, the payments we receive from clients for these services may exceed our total payments to the vendors. This excess is used to partially offset the costs we incur for related equipment and personnel and the risks we assume in entering into these contracts.

We currently charge specific internal costs in the following manner:

    **1. Photocopying, Printing, and Facsimile.** In our U.S. offices, clients are charged ten cents per page for photocopying. These charges are higher in our non-U.S. offices. We do not charge for facsimiles sent or received.

    **2. Computer Research.** There is no extra charge to clients for our use of the firm's internal work product retrieval system. Clients are charged for computer-assisted research from outside services, other than many Westlaw Services, at the vendors' standard rates. For many services from Westlaw, our primary outside computer-research source, we are able to charge clients just 37% of Westlaw's standard rates as of 2016 because we committed to a long-term contract with monthly minimum payments. We may occasionally be able to pass along other discounted rates for computer-assisted research from outside sources when we can negotiate volume discounts.

Case 18-32267-tmb11    Doc 30    Filed 07/09/18

**3. Telecommunications.** We do not charge for local or long-distance calls or for any email communications. Credit card and cell phone calls necessitated by work on your matters are charged at our actual cost.

**4. Mail/Messengers.** In our larger offices, we may use firm messengers whenever appropriate to shorten delivery times and offer greater flexibility. Charges for such internal messengers are equal to or below rates charged by outside messengers for similar services. We do not charge for regular mail. Bulk mailings, packages, overnight deliveries, and special postal services are charged at our actual cost.

**5. Overtime.** Clients are charged for staff overtime, meals, and transportation only when (a) the client specifically requests after-hours effort or (b) the nature of the work necessitates overtime and such work could not have been done during normal work hours.

**6. Discovery Services and Database Hosting.** Certain matters, particularly large-scale litigation, may require certain discovery and ancillary support services such as data processing, data hosting and certain software solutions that you instruct us to use. In some instances we may be able to reduce costs by contracting with vendors, including discovery and data storage vendors on whose servers and other media your information may be stored, to purchase a quantity of service over time that is beyond the needs of a single client. Because these services require us to incur management and other overhead expenses, we may bill you at a reduced per-unit rate that does not fully reflect the quantity of discounts we ultimately obtain.

**Invoices and Payment.** We typically bill monthly, and payment is due upon receipt of the invoice. Payment of an invoice will reflect your agreement to the amount charged on that invoice, and you must bring any misbilling or other charge that you believe is inappropriate to our attention within 45 days of presentation of the invoice. To the fullest extent permitted by law, you agree that we have an attorneys' lien (including, without limitation, in the results of our services) to secure payment of the obligations owed us and that we may take steps to inform others of any attorneys' lien rights we might have. For accounts not paid within 30 days of the invoice date, we add a late payment charge of 1% per month (or such lower rate as required by applicable law) on unpaid balances from the invoice date. Unless otherwise agreed upon, we may apply payments first to our own attorneys' fees and costs of collection, second to our late charges, third to our invoiced fees, and finally to our invoiced disbursement charges. Our election not to exercise any rights or not to require punctual performance of each provision of this agreement will not be construed as a waiver or relinquishment of our rights. We do not and cannot guarantee the outcome of any matter or particular results, and payment of our fees and disbursements is not conditioned on any particular outcome. If we are required to bring an action or proceeding to collect fees or disbursements due us, we will also be entitled to recover certain fees and costs. These include, but are not limited to, our own outside attorneys' fees, expert witness fees, other costs of collection billed to us, and the value of legal services Perkins Coie's own attorneys perform in analyzing or prosecuting a collection action if such circumstances arise on your account. You consent to venue and jurisdiction wherever we have an office with attorneys who worked on your behalf. Also, if we are required to testify, produce documents, or respond to other requests in connection with litigation or other proceedings commenced by third parties that relate to our representation of you, you will pay us our reasonable fees and costs incurred in connection with such activities. For matters handled by our New York lawyers, the client may have a right to arbitrate fee disputes under Part 137 of the Rules of the Chief Administrator of the New York Supreme Court, Appellate Division.

**E-billing Set-Up.** We understand that our clients often use e-billing services. In many instances, those e-billing services electronically send our clients' Outside Counsel Guidelines as part of the procedure to set up the account. Acceptance of Outside Counsel Guidelines by our finance/billing personnel through e-billing services set-up is to facilitate invoicing. To the extent that there may be provisions within those guidelines that conflict with this engagement letter or the Information for Clients attachment, this engagement letter and attachment will control unless we otherwise mutually agree in writing.

**Insurance Coverage.** You may have insurance policies relating to a matter for which you engage us that might cover, among other things, reimbursement of attorneys' fees and costs. If coverage is potentially available, including coverage for our fees and costs, your appropriate insurance company must be notified as soon as possible. We can advise you on the availability of insurance coverage only if you expressly and timely request that we do so,

Case 18-32267-tmb11    Doc 30    Filed 07/09/18

we do not have a conflict of interest, and we agree to undertake such additional work. You would then need to furnish us copies of all relevant insurance policies and related documents. Regardless whether, when, and to what the extent insurance coverage might be available to reimburse all or a portion of our fees and costs, you nevertheless remain primarily obligated for amounts owed us, including any late charges that accrue during any delay in payment by others.

**Advance Payments and Estimates.** We may require advance payments before working or continuing work on a matter. Of course, the amount of work we are called upon to perform may subsequently exceed our prior expectations. Regardless of whether you make an advance payment, you agree that any budget, estimate, or similar range for potential charges is nothing more than a forecast based on then-current assumptions, and any such forecast may be high or low due to changed or unforeseen circumstances. We reserve the right, as a condition of providing additional services, to require an increase in any advance payment.

**Legal Service Provider.** We provide strictly legal services to you in connection with this agreement. You are not relying on us for any services other than legal services, and we are specifically not providing any business, investment, insurance, or accounting advice or any investigation of the character or credit of persons with whom you may be dealing.

**Identity of Client.** You confirm that we are being engaged by you and not any of your subsidiaries, affiliates, equityholders, employees, members of your family, or other persons (collectively, "Affiliates"), unless we separately and explicitly undertake such representation. You also expressly confirm that, as our representation is limited to you and does not include acting as counsel for your Affiliates, we may represent other clients adverse to your Affiliates without disclosing those matters to you or obtaining your consent. If in the future we agreed to expand our representation of you to include one or more of your Affiliates, you, and Affiliate(s), agree that the terms, conditions and consents contained in our engagement letter with you will apply to such representation(s).

**Conflicts of Interest.** We have performed a search of our other clients to determine whether representing you might create a potential conflict of interest with any other clients. That check was done using your name and any other names you gave us. Please inform us immediately if you use other names or have affiliated companies that we should enter into our conflicts system.

**Cooperation/Reliance on Accurate Information.** To enable us to represent you effectively, you will cooperate fully with us in your matter(s). You and your agents will fully and accurately disclose to us all facts and documents that may be relevant to a matter we undertake or which we may otherwise request. This information will form the basis of our legal advice.

**Email Communication Disclaimer.** Many of our legal professionals receive hundreds of email messages per day (in addition to spam). Although email is an efficient method for many communications, it can also be delayed in transit or otherwise missed (e.g., blocked by our anti-spam software). If you have not received a response or acknowledgement of receipt of an email, please notify the intended recipient.

**Termination of Services.** We retain the right to cease performing legal services and to terminate our legal representation for any reason consistent with ethical rules, including conflicts of interest or your failure to pay our legal fees and expenses when due. Our representation in any matter will also cease on completion of our work on that matter unless you ask us to perform additional work that we agree to undertake. Performing additional services for you on the same or any other matter is subject to these terms and conditions, our mutual concurrence and clearance of conflicts, if any. We are unable to assure you that matters for other clients will not conflict us out of additional matters you might later ask us to undertake. On completion of a matter, we may close our files and, absent a specific written undertaking to do so, will not thereafter be obligated to docket milestones, make additional or continuation filings, pursue appeals, take other steps on your behalf on the matter, or monitor or advise you with respect to changes in the law or circumstances that might bear upon or adversely affect the completed matter. If you wish to have us return material from your files after the conclusion of a particular matter, we will provide you such material at your request and expense. Some of our practice groups consider our electronic records to be the official client file. Thus, requests for copies of client files may be provided in electronic form only. We will have no

obligation to retain client files more than one year after the conclusion of a particular matter or our representation. Our representation of you will be deemed concluded at the time that we have rendered our final bill for services on the matter described in our engagement letter or any such additional matters that are clearly undertaken by us. Whether we will undertake any further matters and form an attorney-client relationship again will depend upon your request, our performance of a conflicts check and our expression to you of our willingness to accept any further matters.

**Alliances/Other Counsel.** Many of our clients also have international or other legal needs we cannot fulfill. This causes us from time to time to establish ongoing working relationships or strategic alliances with law firms in other jurisdictions. While our close relationships with our legal colleagues at these firms have helped us provide coordinated representation for many of our clients, these firms (and other firms we may recommend to our clients) are separate from and independent of Perkins Coie. We do not share personnel or fees, do not have common operations beyond occasional joint seminars and presentations, and must check any other firm's conflicts of interest before that firm's lawyers may jointly represent any of our clients. Under rules in certain jurisdictions where we practice, we must advise you that you may consult independent counsel to advise you regarding these documents governing our relationship, and we encourage you to do so if you like. Also, you retain the right to consult with independent counsel at any time while we represent you. However, we are not responsible for any advice an independent counsel may give you, and such consultation will be entirely at your expense.

**Questions.** We endeavor to deliver legal services effectively and efficiently and to render accurate and understandable billings. Please direct any questions about services or billing practices to your client service lawyer. Questions regarding the billing or payment status of your account may also be directed to the Client Accounting Department in our Seattle office at 1-800-261-3143 (206-359-3143 in the Seattle area).

In re ) 
**Wildhorse Meadows, LLC** ) Case No. <u>18-32267-tmb11</u>
)
) RULE 2014 VERIFIED STATEMENT
Debtor(s) ) FOR PROPOSED PROFESSIONAL

**Note:** To file an amended version of this statement per ¶19, file a fully completed amended Rule 2014 statement on LBF #1114 and clearly identify any changes from the previous filed version.

1. The applicant is not a creditor of the debtor except:

**N/A**

2. The applicant is not an equity security holder of the debtor.

3. The applicant is not a relative of the individual debtor.

4. The applicant is not a relative of a general partner of the debtor (whether the debtor is an individual, corporation, or partnership).

5. The applicant is not a partnership in which the debtor (as an individual, corporation, or partnership) is a general partner.

6. The applicant is not a general partner of the debtor (whether debtor is an individual, corporation, or partnership).

7. The applicant is not a corporation of which the debtor is a director, officer, or person in control.

8. The applicant is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor.

9. The applicant is not a person in control of the debtor.

10. The applicant is not a relative of a director, officer or person in control of the debtor.

11. The applicant is not the managing agent of the debtor.

12. The applicant is not and was not an investment banker for any outstanding security of the debtor; has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor; and is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of such an investment banker.

13. The applicant has read 11 U.S.C. §101(14) and §327, and FRBP 2014(a); and the applicant's firm has no connections with the debtor(s), creditors, any party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, or any District of Oregon Bankruptcy Judge, except as follows:

**A member of the business operations team in the firm's Seattle office served as a legal assistant to Judge David W. Hercher when he was in private practice from 1993 - 1997. Stephen Raher, law clerk to Judge Trish Brown, served as an associate at Perkins Coie LLP from 2011 - 2014.**

14. The applicant has no interest materially adverse to the interest of the estate or of any class of creditors or equity security holders.

15. Describe details of all payments made to you by either the debtor or a third party for any services rendered on the debtor's behalf within a year prior to filing of this case:
Applicant received three retainer payments for or on behalf of the Debtor prior to the petition date, initially to oppose GT Capital's efforts in state court to obtain appointment of a receiver, and subsequently to prepare and file three Chapter 11 cases and associated materials: (1) $20,000 from Aspen Lakes Golf Course LLC on May 29, 2018; (2) $50,000 from Triple C Farms LLC on June 25, 2018; and (3) $20,000 from Triple C Farms LLC on June 27, 2018. These three retainers were drawn entirely prior to the filing of the bankruptcy petitions.

16. The debtor has the following affiliates (as defined by 11 U.S.C. §101(2)). Please list and explain the relationship between the debtor and the affiliate: (entities share common ownership by Cyrus')
Wildhorse Meadows LLC - owns the land where the Aspen Lakes Golf Course is located.
Aspen Lakes Golf Course, L.L.C. - owner/operator of the golf course.
Aspen Investments, L.L.C. - owns land adjacent to golf course and other farm land.
Aspen Lakes Utility Company, L.L.C. - owns/operates utility supplying water/sewer to properties.
Sisters Aggregate & Construction, L.L.C. - owns older excavation equipment.
K-C Ranch LLC - owns farm equip. and 900 acres of land. Triple C Farms LLC - owns farm land/equip.

17. The applicant is not an affiliate of the debtor.

18. Assuming any affiliate of the debtor is the debtor for purposes of statements 4-13, the statements continue to be true except (list all circumstances under which proposed counsel or counsel's law firm has represented any affiliate during the past 18 months; any position other than legal counsel which proposed counsel holds in either the affiliate, including corporate officer, director, or employee; and any amount owed by the affiliate to proposed counsel or its law firm at the time of filing, and amounts paid within 18 months before filing):

19. The applicant hereby acknowledges that he/she has a duty during the progress of the case to keep the court informed of any change in the statement of facts which appear in this verified statement. In the event that any such changes occur, the applicant immediately shall file with the court an amended verified statement on LBF #1114, with the caption reflecting that it is an amended Rule 2014 statement and any changes clearly identified.

THE FOLLOWING QUESTIONS NEED BE ANSWERED ONLY IF AFFILIATES HAVE BEEN LISTED IN STATEMENT 16.

20. List the name of any affiliate which has ever filed bankruptcy, the filing date, and court where filed:
See attached.

21. List the names of any affiliates which have guaranteed debt of the debtor or whose debt the debtor has guaranteed. Also include the amount of the guarantee, the date of the guarantee, and whether any security interest was given to secure the guarantee. Only name those guarantees now outstanding or outstanding within the last 18 months:

**Certain of the Debtor's debtor and non-debtor affiliates identified in paragraph 16, above, may have guaranteed the debts of the Debtor. Applicant is currently undergoing a review of such documentation, and will provide a further response, including within the Debtor's Schedules, as additional information becomes available.**

22. List the names of any affiliates which have a debtor-creditor relationship with the debtor. Also include the amount and date of the loan, the amount of any repayments on the loan and the security, if any. Only name those loans now outstanding or paid off within the last 18 months:

**Various affiliates have a debtor-creditor relationship with the Debtors. For instance, Aspen Lakes Golf Course, L.L.C. leases property owned by Wildhorse Meadows LLC, where it owns and operates a golf course and restaurant. The various intercompany loans and transactions will be identified in greater detail in the Debtors' Schedules and Statement of Financial Affairs.**

23. List any security interest in any property granted by the debtor to secure any debts of any affiliate not covered in statements 20 and 21. List any security interest in any property granted by the affiliate to secure any debts of the debtor not covered in statements 21 and 22. Also include the collateral, the date and nature of the security interest, the name of the creditor to whom it was granted, and the current balance of the underlying debt:

24. List the name of any affiliate who is potentially a "responsible party" for unpaid taxes of the debtor under 26 U.S.C. §6672:

I verify that the above statements are true to the extent of my present knowledge and belief.

**Douglas Pahl, Perkins Coie LLP**
Applicant

**Attachment to**
**Rule 2014 Verified Statement for Proposed Professional**

20.     List the name of any affiliate which has ever filed bankruptcy, the filing date, and court
        where filed:

Wildhorse Meadows, LLC              01/20/2011       District of Oregon

Aspen Lakes Golf Course, L.L.C.     06/27/2018       District of Oregon

Aspen Investments, L.L.C.           06/27/2018       District of Oregon