Jonas V. Anderson, VA SB #78240
Acting Assistant United States Trustee
Carla Gowen McClurg, OSB #165144
Trial Attorney
U.S. Department of Justice
Office of the United States Trustee
620 SW Main Street, Room 213
Portland, OR 97205
Tel: (503) 326-7659
Email: carla.mcclurg@usdoj.gov

Attorneys for Gregory M. Garvin,
Acting United States Trustee for Region 18

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Bankruptcy Case Nos. |
| Aspen Lakes Golf Course, LLC, | 18-32265-tmb11 (Lead Case) |
| Aspen Investments, LLC, and | 18-32266-tmb11 |
| Wildhorse Meadows, LLC, | 18-32267-tmb11 |
| Debtors. | Jointly Administered Under Case No. 18-32265-tmb11 |
| | **UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS** |

## UNITED STATES TRUSTEE'S OBJECTION

Gregory M. Garvin, Acting United States Trustee for Region 18 (the "UST"), by and

through Trial Attorney Carla Gowen McClurg, hereby objects to the Debtors' Application for

Order to Employ Perkins Coie LLP ("Perkins") as Attorneys for Debtor filed in each of the

above-referenced jointly administered cases on July 9, 2018 (the "Applications"). The UST

**Page 1 – UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS**

respectfully requests that the Court deny the Applications.  In support hereof, the UST relies on the documents on the court's docket for each of the above-referenced cases and the supporting memorandum that follows.

## MEMORANDUM IN SUPPORT

### I.     Jurisdiction and Factual History

The Court has jurisdiction over this matter pursuant to 11 U.S.C. §§ 1334 and 157.  This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).

On June 27, 2018, voluntary chapter 11 petitions were filed by Aspen Lakes Golf Couse, LLC ("Aspen Lakes"); Aspen Investments, LLC ("Aspen Investments"); and Wildhorse Meadows, LLC ("Wildhorse") (collectively the "Debtors").

According to the Declaration of Matt Cyrus filed on June 27, 2018 in each of the Debtors' cases (the "Cyrus Declaration"), Cyrus family members own the Debtors.  Wildhorse owns an approximately 400-acre golf course in Sisters, Oregon.  Cyrus Declaration ¶7.  Aspen Lakes operates the golf course and owns the personal property associated with operations.  *Id*. Aspen Investments owns approximately 330 acres northwest of the golf course and 120 acres of surface mine and farm land, much of which the Cyrus family intends to develop to expand the current golf course facilities.  *Id*.

On July 9, 2018, the Debtors filed the Applications seeking to employ Perkins, which appear to be identical in each of the cases.  The Debtors filed motions to extend time to file the Summary of Schedules, Schedules A through H, Declaration Concerning Schedules, and the Statement of Financial Affairs on July 11, 2018, which was granted pursuant to orders entered on July 12, 2018.  No extension was requested by the Debtors or Perkins to file the Disclosure of Compensation of Attorney for Debtor, Form 2030 (the "Rule 2016(b) Disclosure").  The Rule

**Page 2 - UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS**

2016(b) Disclosure has not been filed by Perkins as of the date of this objection.

The Debtors seek through the Applications to employ Perkins as general bankruptcy counsel in each of the three cases. The engagement letter attached to the Applications (the "Engagement Letter") indicates on page 1, paragraph 1, that Perkins also represents other Cyrus family businesses, including Aspen Lakes Utility Company, LLC (the "Utility") and Sisters Aggregate and Construction, LLC ("Sisters A&C"). The Engagement Letter addressed to the Debtors, the Utility, and Sisters A&C appears to be the same letter for each entity and all are directed to Matt Cyrus as representative of the clients.

On page 4 of the Engagement Letter, Perkins reminds the Debtors, the Utility, and Sisters A&C:

> As we discussed over the phone over the past two weeks the ideal way to proceed would be for each of you to have separate counsel. On many issues, such as compensation, ownership shares and control of the enterprise, you may or will have conflicting or potentially conflicting interests. Notwithstanding the above, you have each said that, to keep legal costs to a minimum, you wish our firm to represent each of you.

The Engagement Letter further explains on page 4 that each of the Debtors, the Utility, and Sisters A&C "will be jointly and severally responsible for payment [to Perkins]." Perkins further explains to the Debtors, the Utility, and Sisters A&C that "[i]f you cannot resolve your differences, we will not be able to represent any one of you on that issue." The Engagement Letter then provides that Perkins is "confident that Wildhorse['s] payment of fees will not interfere with [their] professional judgment or [their] attorney-client relationship with the other client." Perkins later explains on page 4 of the Engagement Letter that, by "entering into this joint representation, each client agrees that no confidences will exist among us regarding the work that we do for you in the jointly represented matter."

**Page 3 - UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS**

In support of the Applications, Perkins filed identical Rule 2014 Verified Statements for Proposed Professional (the "Rule 2014 Statements") in each of the Debtors' cases. In the Rule 2014 Statements, Perkins discloses the following affiliates of the Debtors: the Utility; Sisters A&C; K-C Ranch, LLC; and Triple C Farms, LLC (the "Farm"). Although the Engagement Letter indicates that fees for the Debtors, the Utility, and Sisters A&C would be paid by Wildhorse, the Rule 2014 Statements (item 15) indicate that Aspen Lakes paid a $20,000 retainer to Perkins on May 29, 2018; the Farm paid a $50,000 retainer to Perkins on June 25, 2018; and the Farm made another retainer payment of $20,000 to Perkins on June 27, 2018. Perkins provided no information in the Rule 2014 Statements regarding the identity of the clients to whom services were rendered and the period of time over which services were rendered.[1]

The Utility provides water to Aspen Lakes and is owned by Cyrus family members, according to the testimony of Mr. Fowler during a hearing on July 3, 2018. Mr. Fowler further testified that Aspen Lakes was responsible for paying the Utility on a monthly and quarterly basis. The Utility therefore would be a creditor of at least Aspen Lakes. Payments to the Utility are included in Aspen Lakes' cash collateral budget.

Despite Perkins's concurrent representation of the Debtors, the Utility, and Sisters A&C, Perkins does not disclose its concurrent representation of the Debtors, the Utility, and Sisters A&C on the Rule 2014 Verified Statement. In the Rule 2014 Statements, Perkins refers to the Debtors collectively and does not specifically identify the debtor-creditor, guarantee, or other relationships that may exist between the Debtors, or even the affiliates that Perkins represents.

---

1 The UST requested documents from Perkins regarding its pre-petition fees and pre-petition fee payments. The documents produced by Perkins show that Perkins did not differentiate between or allocate fees between the Debtors, the Utility, or Sisters A&C.

**Page 4 - UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS**

Case 18-32267-tmb11   Doc 40   Filed 07/25/18

On the Rule 2014 Statements, Perkins makes generalized, incomplete, and/or vague disclosures where critical information is necessary to evaluate the Applications, including in response to:

- Item 13 (requiring disclosure of all connections with the debtors, creditors, any party in interest, their respective attorneys and accountants, the UST, or any pierson employed in the office of the UST, or any District of Oregon Bankruptcy Judge), Perkins discloses:

> A member of the business operations team in the firm's Seattle office served as a legal assistant to Judge David W. Hercher when he was in private practice from 1993 – 1997. Stephen Raher, law clerk to Judge Trish Brown, served as an associate at Perkins Coie LLP from 2011-2014.

- Item 21 (requiring the disclosure of affiliates who have guaranteed debt of the debtor or whose debt the debtor has guaranteed, including the amount, date, and whether a security interest was given to secure the guarantee), Perkins states:

> Certain of the Debtor's debtor and non-debtor affiliates identified in paragraph 16, above, may have guaranteed the debts of the Debtor. Applicant is currently undergoing a review of such documentation, and will provide a further response, including within the Debtor's Schedules, as additional information becomes available.

- Item 22 (requiring the disclosure of affiliates which have a debtor-creditor relationship with the debtor, including the amount and date of the loan, the amount of any repayments on the loan and the security, if any), Perkins states:

> Various affiliates have a debtor-creditor relationship with the Debtors. For instance, Aspen Lakes Golf Course, LLC leases property owned by Wildhorse Meadows, LLC, where it owns and operates a golf course and restaurant. The various intercompany loans and transactions will be identified in greater detail in the Debtors' Schedules and Statement of Financial Affairs.

**Page 5 - UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS**

Case 18-32267-tmb11    Doc 40    Filed 07/25/18

In addition to the generalized, incomplete and/or vague disclosures on the Rule 2014 Statements, Perkins makes contradictory statements regarding whether it is owed fees for pre-pettition services. In response to item 1 on the Rule 2014 Statements, Perkins states "N/A" in response to the statement: "The applicant is not a creditor of the debtor except." However, in paragraph 14 of the Applications, Perkins states: "Perkins Coie may seek payment of additional fees or costs related to this Chapter 11 case incurred prior to the bankruptcy filing from the bankruptcy estate, subject to Court approval." The documents produced to the UST by Perkins seem to reflect that the $90,000 in retainer payments were fully exhausted, a discount was applied to fees owed, and there was a $0 balance as of the petition date.

Perkins also includes in the Engagement Letters a number of waivers of conflicts and of the attorney-client privilege as follows:

- On page 2: future representations by Perkins "without the need to obtain any further or separate approval" from the Debtors, the Utility, or Sisters A&C, including: (1) "other present or future clients in transactions, litigations or other disputes directly adverse to [the Debtors, the Utility, and Sisters A&C] that are not substantially related" to Perkins's representation of the Debtors, the Utility, and Sisters A&C; and (2) "parties who are considered directly adverse parties in matters we handle for [the Debtors, the Utility, and Sisters A&C]" in "matters that are not substantially related" to Perkins's work for the Debtors, the Utility, and Sisters A&C;

- On page 3: waiver of the attorney-client privilege and any conflicts when Perkins consults with Perkins's own ethics counsel;

- On page 4: waiver of conflicts and of the attorney-client privilege through

**Page 6 - UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS**

Case 18-32267-tmb11    Doc 40    Filed 07/25/18

Perkins's joint representation of the Debtors, the Utility, and Sisters A&C; and

- On page 5: an agreement such that "[s]hould a conflict of interest arise that prevents continued joint representation, or a conflict of interest arise after you exit the joint representation," Perkins "may continue to represent the remaining client(s)" and that Perkins's "continued representation of the remaining client(s) may include representing the remaining clients directly adverse to you and that we may use any and all information gained in the course of the joint representation in our continued representation of the remaining client(s)."

Regarding the joint representation of the Debtors, the Utility, and Sisters A&C, page 4 the Engagement Letter further provides that the Debtors, the Utility, and Sisters A&C will be "jointly and severally responsible for payment." Perkins further explains in the Engagement Letter that, if the Debtors, the Utility, or Sisters A&C "disagree on any issue, [Perkins] will ask [them] to resolve [their] differences among [themselves], without [Perkins's] assistance" and that "[i]f [they] cannot resolve [their] differences, [Perkins] will not be able to represent any one of [them] on that issue."

In addition to the significant conflicts, waiver, and fee issues, the Applications are not compliant with bankruptcy and local requirements. For example, attached to the Engagement Letters is a document entitled "Information for Clients" (the "Attachment"). The Attachment includes a number of provisions, not appropriate in bankruptcy, including staff overtime, monthly billing and payment within 45 days with late charges assessed, attorney's fees and costs to collect amounts due to Perkins, coordination to provide services with other law firms other than Perkins, and termination of services for any reason consistent with applicable ethics rules, including nonpayment. Also, the Applications seek to pay an out-of-state associate of Perkins at

**Page 7 - UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS**

Case 18-32267-tmb11    Doc 40    Filed 07/25/18

a non-local rate of $680 per hour.

In paragraph 15 of the Applications, the Debtors state that they recognize "that to the extent that terms contained in the Perkins Coie engagement are at odds with the Bankruptcy Code and Rules or the local rules and forms of the Court, or with the determinations of this Court, such provisions will yield." However, Perkins does not identify which provisions in the Applications "will yield."

It is also unclear if the Applications seek *nunc pro tunc* authorization for Perkins's employment. In the Applications, Perkins does not request retroactive approval of its employment. However, it appears that Perkins intended to file the Applications on the petition date based on language in paragraph 2 of the Applications stating that "[o]n the date hereof (the "Petition Date"), Debtor filed a Voluntary Petition for relief under Chapter 11 of Title 11 of the United States Code . . . ." It is not clear why Perkins delayed in filing the Applications.

## II. Discussion

### 1. Employment-Related Disclosure Requirements for Proposed Bankruptcy Professionals

#### a. Mandatory Disclosure of Connections (Fed. R. Bankr. P. 2014(a))

The Bankruptcy Code and Rules mandate that professionals completely and timely disclose their connections, compensation, and payment arrangements. 11 U.S.C. §329(a), Fed. R. Bankr. P. 2014(a), 2016(b). Applications for employment must be accompanied by a verified statement of the person to be employed describing any connections with the debtor, creditors, or other parties in interest. Fed. R Bankr. P. 2014(a). "This rule assists the court in ensuring that the attorney has no conflicts of interest and is disinterested as required by § 327(a)." *Neben & Starrett v. Chartwell Fin. Corp.* (*In re Park-Helena Corp.*) ("*Park-Helena*"), 63 F.3d 877, 880 (9th Cir. 1995).

**Page 8 – UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS**

"To facilitate the court's policing responsibilities, the Bankruptcy Code and Federal Rules of Bankruptcy Procedure impose several disclosure requirements on attorneys who seek to represent a debtor and who seek to recover fees." *Park-Helena*, 63 F.3d at 880. "The disclosure rules impose upon attorneys an independent responsibility." *Id*. "The disclosures must appear in the application and declaration required by Bankruptcy Rule 2014(a). It is not sufficient that the information might be mined from the petition, schedules, section 341 meeting testimony, or other sources." *In re B.E.S. Concrete Products, Inc.*, 93 B.R. 228, 236 (Bankr. E.D. Cal. 1988).

The purpose of the application "is to provide the court (and the United States Trustee) with information necessary to determine whether the professional's employment meets the broad tests of being in the best interest of the estate." *In re Farrington*, 2007 WL 4365753 at *4 (Bankr. D. Or. 2007) (J. Perris) (quoting 9 *Collier on Bankruptcy* § 2014.03 (15th ed. rev. 1997).

"Rule 2014(a) has long been held to be read broadly." *In re Jore Corp.*, 298 B.R. 703, 725 (Bankr. D. Mont. 2003). "*All facts that may be pertinent* to a court's determination of whether an attorney is disinterested or holds an adverse interest to the estate must be disclosed." *Park-Helena.*, 63 F.3d at 725 (emphasis in original).

> The duty of professionals is to disclose all connections with the debtor, debtor-in-possession, insiders, creditors, and parties in interest . . . . They cannot pick and choose which connections are irrelevant or trivial . . . . No matter how old the connection, no matter how trivial it appears, the professional seeking employment must disclose it.

*In re EWC, Inc.*, 138 B.R. 276, 280-81 (Bankr. W.D. Okla. 1992). "Appearances count. Even conflicts more theoretical than real will be scrutinized." *B.E.S. Concrete Prods.*, 93 B.R. at 236.

Any arguable conflict must be disclosed, "if only to be explained away." *In re Granite Partners, L.P.*, 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1995). It is not for counsel to interfere with the court's function by choosing "which connections impact disinterestedness and which do not."

**Page 9 - UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS**

*Id.* Accord *In re Mehdipour*, 202 B.R. 474, 480 (9th Cir. B.A.P. 1996), *aff'd*, 139 F.3d 1303 (9th Cir. 1998) ("Professionals must disclose all connections with the debtor, creditors and parties in interest, no matter how irrelevant or trivial those connections may seem.").

In this case, although Perkins did not file the Applications for twelve days after the petition date, Perkins failed to satisfy its professional obligation to disclose the information required by Bankruptcy Rule 2014(a). The Applications and Rule 2014 Statements are incomplete on their face. Although the Rule 2014 Statements admit that there are debtor-creditor relationships between the Debtors and various affiliates, no information is provided other than a single example of Aspen Lakes leasing property from Wildhorse to operate the golf course. The Rule 2014 Statements further state that "certain of the Debtor's debtor and non-debtor affiliates . . . may have guaranteed the debts of the debtor" and that Perkis is "currently undergoing a review of such documentation."

Not only does Perkins acknowledge that the Rule 2014 Statements are incomplete and need to be supplemented, Perkins also omits information that it has access to and is required to provide. For example, Perkins does not explain the connections between the Debtors and their various affiliates, including co-clients Sisters A&C and the Utility, other than what property or equipment they own (item 16). The Rule 2014 Statements also fail to disclose that Perkins represents non-debtor affiliates. In addition, the Rule 2014 Statements fail to identify any affiliate who is potentially a "responsible party" for unpaid taxes of the debtor (item 24).

The Rule 2014 Statements are also inconsistent with the Applications in their portrayal of Perkins's status as a creditor. The Rule 2014 Statements indicate that Perkins is not a creditor of the Debtors in response to item 1. However, in the Applications, Perkins states that it "may seek payment of additional fees or costs related to this Chapter 11 case incurred prior to the

**Page 10 - UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS**

bankruptcy filing from the bankruptcy estate, subject to Court approval." Based on the

documents provided to the UST, it appears that Perkins is not owed fees for pre-petition services

despite the language included in the Applications.

The Rule 2014 Statements do not disclose information essential to evaluating Perkins's

qualification for employment under section 327(a) and Bankruptcy Rule 2014(a). Perkins cannot

employed until it discloses all required connections and information for the Court and parties in

interest to evaluate the Applications.

**b. Required Disclosure of Compensation Paid or Agreed to be Paid (11 U.S.C. § 329 and Fed. R. Bankr. P. 2016(b))**

Debtors' attorneys are also subject to the requirements of § 329, which requires that any

attorney representing a debtor file "a statement of the compensation paid or agreed to be paid"

for bankruptcy services, if any payment or agreement was made within a year before bankruptcy,

and "the source of such compensation." 11 U.S.C. §329(a).

Bankruptcy Rule 2016 implements this requirement, and provides that counsel for a

debtor must file, within 15 days of the order for relief, the statement required by §329. Fed. R.

Bankr. P. 2016(b). "A fee applicant must disclose 'the precise nature of the fee arrangement,'

and not simply identify the ultimate owner of the funds." *Park-Helena*, 63 F.3d at 881 (quoting

*In re Glenn Elec. Sales Corp.*, 99 B.R. 596, 600 (D.N.J. 1988). An applicant must "lay bare all

its dealings . . . regarding compensation . . . . [The] fee revelations must be direct and

comprehensive. Coy, or incomplete disclosures . . . are not sufficient." *Id*. (quoting *In re

Saturley*, 131 B.R. 509, 516-17 (Bankr. D. Me. 1991)).

"The disclosure rules [set forth in § 329 and Rule 2016] are applied literally, even if the

results are sometimes harsh." *Park-Helena*, 63 F.3d at 881. "A bankruptcy court must be able to

rely on the veracity of the representations by an attorney in an application for employment." *In

**Page 11 - UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS**

*re Lewis*, 113 F.3d 1040, 1045 (9th Cir. 1997).

In this case, Perkins has not timely filed the Rule 2016(b) Disclosure in any of the Debtors' cases.  Moreover, the Rule 2014 Statements are woefully inadequate in disclosing information concerning Perkins's fee arrangements and agreements regarding compensation.  For example, the Rule 2014 Statements indicate that Aspen Lakes and the Farm paid retainers to Perkins while the Engagement Letters indicate that Wildhorse would be paying the fees.  Although the Engagement Letters indicate that the Debtors, the Utility, and Sisters A&C were "jointly and severally liable" for payment of Perkins's fees, that information is withheld from disclosure in the Rule 2014 Statements.

The arrangements or agreements concerning the payment of fees to Perkins are not disclosed.  Perkins does not disclose if the payments made to Perkins by Aspen Lakes and the Farm are loans, and, if so, what the terms are regarding those loans.  Perkins does not disclose how or whether any fee payments were allocated between the Debtors, the Utility, and Sisters A&C.  Perkins also does not disclose in the Rule 2014 Statements that it apparently intends to look to Wildhorse first for payment of fees charged to the Debtors, the Utility, and Sisters A&C.

For these reasons, the Rule 2014 Statements do not satisfy the requirements of §329(a) and Rule 2016(b).  Perkins has failed to comply with these essential disclosure requirements.

### 2.  Qualification for employment

"If a professional is not qualified to be employed under § 327, employment cannot be approved regardless of the accuracy and extent of disclosures." *In re Farrington*, 2007 WL 4365753 at *7.  Section 327 is rooted in the "congressional intention to hold professionals performing duties for the estate to strict fiduciary standards."  *In re Envirodyne Indus., Inc.*, 150 B.R. 1008, 1016 (Bankr. N.D. Ill. 1993).  Section 327's main policy objective is to insure that a

**Page 12 - UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS**

professional employed in the case will devote undivided loyalty to the client. *In re Lee*, 94 B.R. 172, 178 (Bankr. C.D. Cal. 1988). "Conflicting loyalties produce inadequate representation, which threatens the interests of both the debtor and the creditors, and compromises the ability of the court to mete out justice in the case." *Id*. Moreover,

> what may be acceptable in a commercial setting, where all of the entities are solvent and creditors are being paid, is not acceptable when those entities are insolvent and there are concerns about intercompany transfers and the preference of one entity and its creditors at . . . the expense of another.

*Enviordyne*, 150 B.R. at 1018. *See also In re Amdura Corp*, 121 B.R. 862, 866 (Bankr. D. Colo. 1990).

Debtor's counsel must be able to act in the bests intersts of the bankruptcy estate free of any prior or ongoing commitements. *Envirodyne*, 150 B.R. at 1018. "Because of these limitations, a chapter 11 debtor does not have an absolute right to counsel of its choice." *Id*.

Section 327(a) of the Bankruptcy Code requires that, in order to be employed by the bankruptcy estate, professionals "not hold or represent an interest adverse to the estate" and be "disinterested persons." 11 U.S.C. § 327(a). "This standard is high: 'If there is any doubt as to the existence of a conflict, that doubt should be resolved in favor of disqualification.'" *In re Wheatfield Bus. Park, LLC*, 286 B.R. 412, 418 (Bankr. C.D. Cal. 2002) (quoting *Lee*, 94 B.R. at 177).

A person is "disinterested" if, in part, the person

> does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14)(C). The statutory requirements of section 327(a) – disinterestedness and not holding or representing an interest adverse to the estate – serve the important policy of ensuring

**Page 13 - UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS**

Case 18-32267-tmb11    Doc 40    Filed 07/25/18

that all professionals appointed under section 327(a) tender undivided loyalty and provide

untainted advice and assistance in furtherance of their fiduciary responsibilities. *In re Tevis*, 347

B.R. 679, 687 (9th Cir. B.A.P. 2006).

The Code does not define the phrase "adverse interest." But in the Ninth Circuit:

> A generally accepted definition of "adverse interest" is the (1)
> possession or assertion of an economic interest that would tend to
> lessen the value of the bankruptcy estate; or (2) possession or
> assertion of an economic interest that would create an actual or
> potential dispute in which the estate is a rival claimant; or (3)
> possession or a predisposition under circumstances that create a
> bias against the estate.

*In re AFI Holding, Inc.* 530 F.3d 832, 845 (9th Cir. 2008); *see also In re Martin*, 817 F.2d 175,

180 (1st Cir. 1987) (stating that a bankruptcy court must inquire whether the connection created

"either a meaningful incentive to act contrary to the best interests of the estate and its sundry

creditors – an incentive sufficient to place those parties at more than acceptable risk – or the

reasonable perception of one.") "Such an adverse interest is 'material' if it exists 'by reason of

any direct or indirect relationship to, connection with, or interest in, the debtor . . ., or for any

other reason.'" *Dye v. Brown* (*In re AFI Holding, Inc.*), 355 B.R. 139, 149 (B.A.P. 9th Cir.

2006) (quoting 11 U.S.C. § 101(14)(e)).

To "represent an interest adverse to the estate" means "to serve as an attorney for an

entity holding such an adverse interest." *In re Tevis*, 347 B.R. at 688. The "adverse interest"

and "disinterestedness" tests overlap, and include "a prohibition on representing conflicting

interests." *Id*. at 687; *In re Farrington*, 2007 WL 4365753 at *3.

In determining whether counsel represents an interest adverse to the estate, the court

**Page 14 - UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED
DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS**

Case 18-32267-tmb11   Doc 40   Filed 07/25/18

looks to the Oregon Rules of Professional Conduct ("ORPC"). *In re Tevis*, 347 B.R. at 688.[2]

ORPC 1.7 governs representation of current clients and conflicts of interest. ORPC 1.7 provides that a lawyer shall not represent a client if the representation involves a current conflict of interest. A current conflict of interest exists if:

1.  The representation of one client will be directly adverse to another client;

2.  There is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or by a personal interest of the lawyer; or

3.  The lawyer is related to another lawyer, as parent, child, sibling, spouse or domestic partner, in a matter adverse to a person whom the lawyer knows is represented by the other lawyer in the same matter. ORPC 1.7(a).

Notwithstanding the existence of a current conflict of interest, a lawyer may represent a client if:

1.  The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

2.  The representation is not prohibited by law; and

3.  The representation does not obligate the lawyer to contend for something on behalf of one client that the lawyer has a duty to oppose on behalf of another client; and each affected client gives informed consent in writing. ORPC 1.7(b).

Due to Perkins's inadequate disclosure in its Rule 2014 Statements, it is impossible to

---

2   This memorandum does not analyze whether Perkins holds an interest adverse to the estate. *See Tevis*, 347 B.R. at 688 (setting forth the definition of what it means to hold an interest adverse to the estate according to reported cases). In the event that Perkins discloses information that reflects that it may hold an interest adverse to the estate, the UST reserves the right to further supplement his memorandum.

discern the relationships between Perkins's five current clients. It is therefore not possible at this stage to determine the extent and nature of Perkins's current conflicts of interest with respect to its concurrent representation of these clients – some of which are creditors of others or have other important relationships. Yet even the inadequate information that Perkins has disclosed is enough to demonstrate that Perkins cannot competently and diligently represent the Debtors, the Utility, and Sisters A&C. Perkins may be obligated to contend for something on behalf of one client that it has a duty to oppose for another.

For example, based on the scant information disclosed so far, Perkins represents both the lessee (Aspen Lakes) and the lessor (Wildhorse) of real property on which the golf course is operated – obligating Perkins to potentially advocate for reduced or no rent payments on behalf of one client and increased rent payments and other terms on behalf of another. A similar example is Perkins's representation of a primary utility customer (Aspen Lakes) and the utility provider (the Utility), which could require Perkins to advocate for a higher utility deposit for one client and a lower deposit for the other. Notably, Perkins has failed to file a timely motion pursuant to section 366, which could result in the Utility refusing or discontinuing water services to Aspen Lakes. *See* 11 U.S.C. §366(b).

Perkins's concurrent representation of the Debtors, the Utility, and Sisters A&C is prohibited under applicable bankruptcy law. "Section 327(a) prohibits an attorney (or other professional) from representing a debtor in a chapter 11 case if the attorney has or represents an *actual* conflict of interest. This prohibition is absolute, and is not subject to waiver or consent." *Wheatfield*, 286 B.R. at 420-21 (emphasis in original).

"Where a bankruptcy debtor is a creditor of a related debtor, it is presumptively improper for the same attorney (or law firm) to be general counsel for the related debtors." *Wheatfield*,

**Page 16 - UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS**

Case 18-32267-tmb11    Doc 40    Filed 07/25/18

286 B.R. at 418.  The Bankruptcy Code does not permit a debtor-in-possession to negate a conflict by signing a waiver "because the ultimate party at interest is the creditors of the bankruptcy estate." *In re Perry*, 194 B.R 875, 880 (E.D. Cal. 1996).

Additionally, section 327 also "prohibits an attorney from holding or representing a certain level of *potential* conflicts of interest." *Wheatfield*, 286 B.R. at 421.  "Employment may not be approved where a potential conflict creates a meaningful disincentive to act contrary to the best interests of the estate and its various creditors." *Id.*; *see In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998).  Thus, an actual conflict of interest violates section 327.  A potential conflict of interest "may also require the disqualification of a professional, if in the judgment of the court, the conflict is sufficiently important and there is a sufficient likelihood that it will ripen into an actual conflict." *Wheatfield*, 286 B.R. at 421.

Although Perkins's disclosures are inadequate and provide scant information about actual and potential conflicts of interest, the disclosures are sufficient to demonstrate that Perkins cannot be employed as general counsel to the Debtors.  Perkins has placed itself in the untenable position of having to advocate one position on behalf of one client and something entirely different for another in its concurrent representation of three debtors and two non-debtors.

Despite this peril, Perkins intends to continue representing these debtors, charging the estate significant fees, and then abandoning clients in the midst of a pending bankruptcy case once the likely conflicts come to fruition.  To make matters worse, in the likely event Perkins must abandon one or more clients because a conflict arises, Perkins nonetheless intends to continue representing the clients that remain, to use confidential and privileged information to represent them, and to take positions that are directly adverse to Perkins's former clients.  *See* ORPC 1.6 (Confidentiality of Information); *see also* ORPC 1.9 (Duties to Former Clients).

**Page 17 - UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS**

The Court should therefore deny the Applications, and the Debtors should seek replacement representation so Perkins does not place the Debtors, their creditors, and the bankruptcy estates in a situation in which Debtors' counsel must withdraw and abandon them in the middle of a bankruptcy proceeding due to likely and foreseeable conflicts.

### 3. Employment of Professionals *Nunc Pro Tunc*

"It is clear that there is no right to a *nunc pro tunc* order." *In re Kroeger Prop. and Dev., Inc.*, 57 B.R. 821 (B.A.P. 9th Cir. 1986). "Both Section 327 and Bankruptcy Rule 2014 explicitly require attorneys to seek the approval of the court before they commence employment for the estate." *Id.*

Retroactive approval of employment "should be limited to situations in which 'exceptional circumstances' exist." *Atkins v. Wain, Samuel & Co.* (*In re Atkins*), 69 F.3d 970, 974 (9th Cir. 1995). To establish the presence of exceptional circumstances, professionals seeking retroactive approval must satisfy two requirements: they must (1) satisfactorily explain their failure to receive prior judicial approval; and (2) demonstrate that their services benefitted the bankrupt estate in some manner. *Id.*

To the extent that Perkins seeks an order authorizing its employment as of the petition date, Perkins must address the requirements of *Atkins*. Perkins has not addressed the *Atkins* factors in the Applications and its employment, if permitted despite the issues raised by the UST, should not be retroactive until Perkins meets its high burden in establishing "exceptional circumstances."

### 4. Employment Terms Inappropriate in Bankruptcy Cases and Non-Local Fee Rates

The Applications, including the Attachment, are replete with requirements and terms that are not appropriate in bankruptcy cases. For example, the Attachment includes a number of

**Page 18 - UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS**

Case 18-32267-tmb11    Doc 40    Filed 07/25/18

provisions, not appropriate in bankruptcy, including staff overtime, staff meals, monthly billing and payment within 45 days with late charges assessed, attorney's fees and costs to collect amounts due to Perkins, coordination to provide services with law firms other than Perkins, and termination of services for any reason consistent with applicable ethics rules, including nonpayment. *See e.g.* 11 U.S.C. §§ 330, 331; Fed. R. Bankr. P. 2016(a); LBR 2016-1. While Perkins seems to acknowledge the Engagement Letters may violate applicable bankruptcy rules and requirements and that those terms will "yield" to them, Perkins should be required to identify and address all such terms in the event the Court entertains Perkins's employment.

The Applications seek to pay Perkins for the services of a California-licensed associate at a non-local rate of $680 per hour. Perkins has not, and likely cannot, satisfy the requirements of LBR 2016-1(b)(4) to pay an hourly rate to non-local counsel at non-local rates. In this case, it appears that Perkins is simply understaffed in its Oregon office, and the bankruptcy estates and creditors should not have to pay the higher rate of using an out-of-state attorney inexperienced in Oregon rules and requirements due to Perkins's staffing issues.

### III.     Conclusion

The court should deny the Applications and should not authorize Perkins's employment as general bankruptcy counsel. Perkins's disclosures, required by the Bankruptcy Code and Rules, are inadequate and incomplete. Even from the scant information Perkins has disclosed, it is clear that Perkins's concurrent representation of the Debtors, Sisters A&C, and the Utility is not just likely, but nearly certain, to result in actual conflicts of interest (if not already) that could be devastating to the bankruptcy estate and creditors.

DATED this 25th day of July, 2018.

                                    Respectfully submitted,
                                    GREGORY M. GARVIN

**Page 19 - UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS**

Acting United States Trustee for Region 18


/s/ Carla Gowen McClurg
CARLA GOWEN McCLURG, OSB #165144
Trial Attorney

**Page 20 - UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS**

Case 18-32267-tmb11    Doc 40    Filed 07/25/18

**CERTIFICATE OF SERVICE**

I hereby certify that on July 25, 2018, I served a copy of the foregoing **UNITED STATES TRUSTEE'S OBJECTION TO JOINTLY ADMINISTERED DEBTORS' APPLICATIONS FOR ORDER TO EMPLOY PERKINS COIE AS ATTORNEYS** by mailing a copy of this document, by United States first class mail, postage prepaid, addressed to the following:

Aspen Lakes Golf Course, L.L.C.
16900 Aspen Lakes Dr
Sisters, OR 97759

Aspen Investments, L.L.C.
16900 Aspen Lakes Dr
Sisters, OR 97759

Wildhorse Meadows, LLC
16900 Aspen Lakes Dr.
Sisters, OR 97759



GREGORY M. GARVIN
Acting United States Trustee for Region 18


/s/ Carla Gowen McClurg
CARLA GOWEN McCLURG, OSB #165144
Trial Attorney